Argued and submitted April 22, affirmed June 15, reconsideration denied August 5, petition for review allowed August 24, 1988 (306 Or 527)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff,*

*v.*

CHARLES M. KEENAN,
*Defendant.*

STATE OF OREGON,
*Respondent,*

*v.*

NAN WALLER,
*Appellant.*

(C8612-36601; CA A43996)

756 P2d 51

Lawrence Matasar, Portland, argued the cause for appellant. With him on the brief was Hoffman, Matasar & Glaeser, Portland.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendant Waller, an attorney, appeals from a contempt judgment, ORS 33.030, and contends that her refusal to disclose the dates on which she had conferences with a former client in an aggravated murder prosecution is protected by the attorney-client privilege and the duty of an attorney to maintain the confidences and preserve the secrets of a client. We affirm.

On October 18, 1985, Waller, an attorney in the public defender's office, was appointed to represent defendant Keenan as a suspect in the murder of Webb, but before he was charged. Before that appointment, Keenan had been interviewed on numerous occasions by detectives, but no arrest was made. On December 18, 1985, Waller, at Keenan's direction, wrote and delivered a letter to the prosecutor and detectives involved in the Webb homicide notifying them that she represented Keenan, that he did not want to talk to the detectives or the prosecutor and that all future communications were to be through her and not with Keenan.

Active investigation of the Webb murder ceased. After Keenan was convicted of a different murder, he contacted the police and confessed to the Webb murder in a series of statements made during and after October, 1986. Waller was not notified about the interviews.

Keenan was indicted for aggravated murder and subsequently moved to suppress his confessions on the ground that Waller was representing him from the time of her appointment on October 18, 1985, until arraignment on the Webb murder charge. According to him, the statements were obtained in violation of his rights to remain silent and to the assistance of counsel which were asserted in Waller's December, 1985, letter to the prosecutor and detectives.

At a pretrial hearing, Keenan called Waller to testify that she had been appointed as counsel, that her appointment had not been formally terminated and that her letter to the prosecution and detectives had been delivered. On cross-examination, the state asked Waller the date of her first contact with Keenan. Keenan objected and asserted, among other grounds, the attorney-client privilege. At a subsequent hearing, the state asked Waller for the dates when she consulted

with Keenan. The trial court overruled Keenan's objections based on relevancy, the attorney-client privilege and violation of an attorney's duty to a client and ordered Waller to answer the question. The trial court informed the state that it would not allow inquiry into the substance of the conversations. Waller was held in contempt when she persisted in refusing to testify.[1] Incarceration was suspended pending this appeal.

■    OEC 503 provides, in part:

"(1) As used in this section, unless the context requires otherwise:

"* * * * *

"(b) 'Confidential communication' means a communication not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

"* * * * *

"(2) A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

"(a) Between the client or the client's representative and the client's lawyer or a representative of the lawyer[.]"

The availability of the privilege depends on the existence of two conditions: (1) The communication must be confidential within the meaning of OEC 503(1)(b); and (2) the communication must be made for the purpose of facilitating the rendition of professional legal services to the client. *State v. Jancsek,* 302 Or 270, 275, 730 P2d 14 (1986).

■    In construing *former* ORS 44.040(1)(b),[2] we have held

---

[1] The state also asked Waller whether her last conversation was before October, 1986, whether she had any contacts with him in October, 1986, and whether she had any contact with him in November or December, 1986. The trial court found Waller in contempt for each question when she refused to answer.

[2] *Former* ORS 44.040 provided, in part:

"(1) There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases:

"* * * * *

"(b) An attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon, in the course of professional employment."

that the privilege applies only to the communication itself and not to the *fact* that a client has consulted an attorney. *State v. Bilton,* 36 Or App 513, 516, 585 P2d 50 (1978). The privilege is limited the same way under OEC 503(2). Waller was not asked to reveal the content of her conversations with Keenan but only whether conversations took place. We hold that disclosure of the conference dates does not fall within the attorney-client privilege, because it does not call for the disclosure of the content of any communication.

Waller argues, however, that the state's real purpose is to discover whether her representation of Keenan had been terminated. If it had been, then, presumably, the state would have been free to question him about the Webb murder and would not have been required to communicate with him through Waller. A short, but not very helpful, answer is that the point had not been reached in the state's examination which would disclose or tend to disclose whether the representation had ended. In any event, however, courts have uniformly held that the privilege does not attach to evidence about the creation or existence of the attorney-client relationship but, in fact, presupposes that relationship. *State v. Bilton, supra,* 36 Or App at 516; McCormick, *Evidence* 215, § 90 (3d ed 1984).

Waller contends, however, that the privilege may apply to the existence of the relationship, if the disclosure of the relationship itself threatens to reveal the substance of a confidential communication. *See Cole v. Johnson et al,* 103 Or 319, 333, 205 P 282 (1922); *Condon v. Petacque,* 90 FRD 53, 54 (ND Ill 1981); *Duval County Ranch Co. v. Alamo Lumber Co.,* 663 SW2d 627, 634 (Tex Civ App 1983). She has not shown that disclosure of conference dates would reveal anything about the substance of the communications or that the fact of her representation would reveal the substance of any confidential communication. It is difficult to see how the latter fact might be privileged when it is clear that a client who hires or discharges an attorney necessarily anticipates that the attorney will tell others who need to know whether the attorney represents the client. In fact, Keenan moved to suppress his confession on the basis that Waller represented him. In those circumstances, it can hardly be said that such a communication is intended to be confidential.

■    We dispose of Waller's other arguments by the same rationale. She contends that her refusal to testify is protected by both the duty to maintain the confidences and preserve the secrets of her client, ORS 9.460(5),[3] Code of Professional Responsibility, Canon 4, DR 4-101(A),[4] and the duty of an agent not to "communicate information confidentially given him by the principal." *Restatement (Second) Agency,* § 395 (1958). The dates on which Waller and Keenan conferred cannot be construed as "secrets" of a client nor "information confidentially given" by a principal. The trial court properly concluded that testimony about the conference dates would not violate either the attorney-client privilege or any duty of an attorney.

Affirmed.

---

[3] ORS 9.460(5) provides:

"An attorney shall:

"* * * * *

"Maintain inviolate the confidence, and at every peril to the attorney, preserve the secrets of the clients of the attorney[.]"

[4] Canon 4 of the Code of Professional Responsibility states: "A lawyer should preserve the confidences and secrets of a client." DR 4-101(A) defines confidence and secret:

" 'Confidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client."