Argued and submitted September 9, accused suspended from the practice of law for 60 days November 22, 2002

## In re Complaint as to the Conduct of

## MICHAEL L. SPENCER,
*Accused.*
## (OSB 00-49, 00-51; SC S49362)

58 P3d 228

Michael L. Spencer, Klamath Falls, argued the cause and filed the brief for himself.

Chris Mullmann, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) charged the accused with violating three disciplinary rules of the Code of Professional Responsibility in two different matters. In the Slattum matter, the Bar alleged that the accused violated Code of Professional Responsibility Disciplinary Rule (DR) 1-102(A)(3) (engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation") and DR 7-102(A)(7) (counseling or assisting client in conduct that lawyer knows to be illegal or fraudulent). In the Gibson matter, the Bar alleged that the accused violated DR 9-101(C)(4) (lawyer must return to client property that client is entitled to receive). A trial panel of the Disciplinary Board concluded that the accused had violated only DR 1-102(A)(3) and determined that the appropriate sanction was suspension from the practice of law for 60 days.

The accused has sought review, arguing that his actions did not violate DR 1-102(A)(3).[1] He also argues that, if his actions did constitute such a violation, a 60-day suspension is an excessive sanction. The Bar also has sought review, arguing that the trial panel erred in concluding that the accused did not violate DR 7-102(A)(7)[2] in the Slattum matter and DR 9-101(C)(4)[3] in the Gibson matter.

---

[1] DR 1-102(A) provides, in part:

"It is professional misconduct for a lawyer to:

"* * * * *

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[2] DR 7-102(A) provides, in part:

"In a lawyer's representation of a client or in representing the lawyer's own interests, a lawyer shall not:

"* * * * *

"(7) Counsel or assist the lawyer's client in conduct that the lawyer knows to be illegal or fraudulent."

[3] DR 9-101(C) provides, in part:

"A lawyer shall:

"* * * * *

"(4) Promptly * * * deliver to a client as requested by the client * * * properties in the possession of the lawyer which the client is entitled to receive. * * *"

We review this proceeding *de novo*, ORS 9.536(3); Bar Rule of Procedure (BR) 10.6, to determine whether the Bar has proved its allegations by clear and convincing evidence. ORS 9.536(1); BR 5.2. For the reasons that follow, we agree with the trial panel that, in the Slattum matter, the accused violated DR 1-102(A)(3) but not DR 7-102(A)(7). We disagree with the trial panel's decision regarding the Gibson matter and conclude that the accused violated DR 9-101(C)(4). We also determine that the appropriate sanction is suspension from the practice of law for 60 days.

## I. FACTS

### A. *Slattum Matter*

In 1996, John and Suzanne Slattum were residents of San Diego County, California. In 1995 or early 1996, John Slattum began working as a consultant for Klamath County, Oregon. He divided his time between Oregon and California. While in Oregon, he would rent temporary housing; his wife and children remained in California, and his children attended school there. During that time, the Slattums put up the family home for sale. They expressed an intention to move to Oregon when their house sold. Also in 1996, John Slattum and the accused began a joint business venture, which ultimately failed.

In late 1996, the Slattums purchased a 33-foot motor home and took delivery in Klamath Falls, Oregon. The accused agreed to assist the Slattums in registering their motor home in Oregon. The Slattums filled out a Department of Motor Vehicles (DMV) registration form and gave it to the accused along with a personal check for $250. Both of the Slattums signed the form. The day after taking delivery of the motor home, the Slattums drove it to their home in California. The accused delivered the registration form to Oregon DMV along with his personal check for $216 (the cost of registering the vehicle in Oregon).

On the registration form, the Slattums listed the accused's home address as their mailing address. They left blank the lines on the form for residence address and county of residence, and for county of use they listed "USA." By signing the form, each of the Slattums represented that "[m]y

place of domicile (home) is in Oregon, or I am otherwise eligible or required to register the vehicle under Oregon law (ORS 803.200, ORS 803.360)." At approximately the same time, John Slattum obtained an Oregon driver license listing as his address the home address of the accused. At no time did either of the Slattums reside with the accused. By registering the vehicle in Oregon instead of in California, the Slattums saved more than $20,000 in California and San Diego County taxes and fees.

In 1998, the accused and his wife divorced. The accused moved to another residence, and his former wife remained in the family home. In 1996, she had known of the registration of the motor home, which listed as the mailing address the address of the home that she shared with the accused, and she had been concerned about potential criminal liability. In October 1998, the accused's former wife received a DMV registration renewal form for the Slattums' motor home that had been sent to the Slattums at her address. She had been unaware that the motor home was still registered to her home address. She contacted the accused through her divorce lawyer and demanded that he remove her address from the motor home registration. At the trial panel hearing, the accused asserted that, when he received the renewal notice from his former wife, he contacted the Slattums and instructed them to register the vehicle in California. The accused's former wife later learned, however, that the Slattums had renewed the motor home registration in November 1998 and that the form still listed her address. In early 1999, John Slattum changed the addresses on his Oregon driver license and on the motor home registration to the accused's new address. Two years later, John Slattum contacted Oregon DMV and stated that, although he had planned to move to Oregon, those plans had not materialized, and that he would re-register the motor home in California. As of February 1, 2001, the motor home registration still listed the accused's home address as the Slattums' mailing address. The record does not indicate whether anyone changed the address on the registration after that date.

The Bar's complaint alleged that the accused filed the DMV registration form mentioned above on behalf of the

Slattums. The complaint also alleged that, at that time, the accused was acting as the Slattums' lawyer. According to the Bar, the accused knowingly assisted the Slattums in registering their vehicle illegally in Oregon. The Bar charged the accused with violating DR 1-102(A)(3) and DR 7-102(A)(7).

When the accused first responded to the Bar's inquiries, he asserted the lawyer-client privilege, refusing to discuss the matter or to cooperate with the Bar's investigation. During the trial panel hearing, however, he asserted that, in 1996, when he delivered the registration form for the motor home, he was not the Slattums' lawyer. The accused argued that he began to serve as John Slattum's lawyer in 1998 and, after that date, he had a duty under DR 4-101 to protect from disclosure all client "secrets," including those that related to the time before he began to act as Slattum's lawyer.[4] In other words, the accused took the position at the hearing that his assertion in 2000 of the lawyer-client privilege as to communications and information related to the 1996 motor home registration was consistent with his claim that he had not been the Slattums' lawyer in 1996, and that he began to serve as a lawyer for John Slattum only in 1998. The accused further argued that the Bar had failed to present any evidence, other than the accused's assertion of the lawyer-client privilege in response to the Bar's inquiries in 2000, of the existence of a lawyer-client relationship in 1996.

The trial panel concluded that the Bar had failed to prove by clear and convincing evidence that the accused was acting as the Slattums' lawyer when he assisted in registering the motor home. Therefore, the trial panel concluded that the accused did not violate DR 7-102(A)(7), which requires a lawyer-client relationship. The trial panel did determine, however, that the accused's conduct involved dishonesty, deceit, and misrepresentation. Therefore, the trial panel concluded that the accused had violated DR 1-102(A)(3), which does not require that a lawyer-client relationship exist.

---

[4] DR 4-101 defines client "secrets" as "other information gained in a current or former professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client."

B.  *Gibson Matter*

In late 1999, Jan Gibson sought representation from the accused concerning a claim that a bankruptcy trustee fraudulently had converted her home following her 1992 bankruptcy. After a conversation with the accused's receptionist, she delivered various documents for the accused's review. She never met or talked with the accused. After skimming Gibson's cover letter, and without examining the documents, the accused decided not to represent Gibson. He gave Gibson's documents to his legal assistant, who notified her of the accused's decision not to represent her. Two or three weeks later, Gibson requested that the accused return the documents to her. The legal assistant returned a few of Gibson's documents and informed her that the rest of the documents had been shredded.

The Bar charged the accused with violating DR 9-101(C)(4) by failing to return to Gibson property to which she was entitled. The trial panel, however, determined that, because Gibson never became a client of the accused, and because DR 9-101(C)(4) applies only to clients, the accused did not violate that rule. The trial panel declined to interpret DR 9-101(C)(4) to apply to prospective clients.

## II.  DISCUSSION

A.  *Slattum Matter*

On review, the accused argues that the trial panel erred in concluding that he had violated DR 1-102(A)(3) for two reasons. First, the accused contends that the Bar failed to follow BR 4.1(c), which requires that the Bar's formal complaint "set forth succinctly the acts or omissions of the accused * * * so as to enable the accused to know the nature of the charge or charges against the accused." Specifically, the accused argues that the Bar's complaint alleged that he engaged in the conduct described above in his capacity as a lawyer, but failed to allege that he engaged in that conduct as a private individual.[5] Because the trial panel concluded that

---

[5] The accused's argument apparently rests upon the Bar's allegation that, "[a]t all times material hereto, the accused was acting as an attorney for John and Suzanne Slattum[.]"

the accused had not acted as the Slattums' lawyer when he agreed to register their motor home, the accused argues, the trial panel erred in concluding that he committed a violation that the Bar did not allege specifically.

Alternatively, the accused argues that his conduct in registering the Slattums' motor home did not constitute dishonesty, fraud, deceit, or misrepresentation, because one reasonably could argue that the Slattums were entitled to register the motor home in Oregon. ORS 803.200(1) provides that a person is a resident of Oregon for purposes of registering vehicles if, among other things, "the person engages in any gainful employment in [Oregon]."[6] According to the accused, John Slattum was "gainfully employed" in Oregon as a consultant and operated the motor home in question as a mobile office. The accused also argues that the Slattums had represented to him that they intended to move to Oregon permanently and, to that end, were attempting to sell their house in California. Under those circumstances, the accused contends, the Slattums arguably came within the scope of ORS 803.200(1) and, thus, arguably could register their motor home in Oregon.

In response, the Bar argues that the Slattums do not meet any of the criteria for establishing residency set out in ORS 803.200. The Bar points out that ORS 803.200(4) provides, in part:

---

[6] ORS 803.200(1) provides:

"A person is a resident of this state for purposes of titling and registering vehicles if the person engages in any gainful employment in this state or takes any action to indicate the acquiring of residence in this state during the period of sojourn in this state by doing any of the following:

"(a) Remaining in this state for a consecutive period of six months or more regardless of the domicile of the person.

"(b) Placing children in a public school without payment of nonresident tuition fees.

"(c) Making a declaration to be a resident of this state for the purpose of obtaining, at resident rates, a state license or tuition fees at an educational institution maintained by public funds.

"(d) Maintaining a main office, branch office or warehouse facilities in this state and operating motor vehicles in this state.

"(e) Operating motor vehicles in intrastate transportation for compensation or profit for other than seasonal agricultural work."

"Notwithstanding subsection (1) of [ORS 803.200], a person who is gainfully employed in this state shall not be considered a resident of the state if the person has taken no other steps to become a resident."

With respect to that provision, the Bar argues that the accused presented no evidence that John Slattum had taken any steps, other than working on one consulting contract in Oregon, to become a resident of Oregon. The Slattums' alleged desire to become Oregon residents in the future, in the Bar's view, was not a sufficient step. The Bar also argues that the accused has ignored ORS 803.360, which provides that, notwithstanding ORS 803.200, a person domiciled in another state may not register a motor home in Oregon.[7]

■ ■ We first address the accused's argument that the trial panel erred in concluding that the accused committed a violation that was not alleged in the formal complaint. DR 1-102(A)(3) does not require that an accused be acting as a lawyer at the time of the violation. *In re Coe*, 302 Or 553, 565, 731 P2d 1028 (1987). In its complaint, the Bar alleged that, "By knowingly assisting the Slattums in registering a motor vehicle in violation of Oregon law, the accused engaged in conduct involving dishonesty, deceit or misrepresentation * * *." The Bar specifically asserted that the accused's conduct violated both DR 1-102(A)(3) and DR 7-102(A)(7). The complaint thus was sufficient to notify the accused of the allegations against him. It is true that the Bar's additional allegation that the accused acted as a lawyer for the Slattums, an allegation that was necessary to prove a violation of DR 7-102(A)(7), was not

---

[7] ORS 803.360 provides, in part:

"(1) No person may register or renew the registration of a vehicle in this state unless the person is domiciled in this state, as described in ORS 803.355 [set out below]. This section does not apply to persons required by ORS 803.200 or any other provision of law, to register vehicles in this state.

"(2) Notwithstanding subsection (1) of this section, a person who is not domiciled in this state may register or renew the registration of a vehicle that:

"* * * * *

"(d) Is not a motor home or a camper."

ORS 803.355 defines a person as a domiciliary of Oregon if that person's "place of abode is in the state and the person intends to remain in the state or, if absent, to return to it."

necessary to make out a violation of DR 1-102(A)(3). However, the most that may be said of the additional allegation, as it related to the alleged DR 1-102(A)(3) violation, is that it was surplusage and could have been stricken on an appropriate motion. With or without it, however, the alleged violation of DR 1-102(A)(3) was pleaded properly.

■ We turn to the question whether the accused violated DR 1-102(A)(3) by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. The record contains ample evidence indicating that the Slattums were neither domiciled in Oregon nor otherwise eligible to register a motor home in Oregon. John Slattum lived in Oregon only sporadically as necessary to work as a consultant. The evidence at the hearing did not show that Slattum used any Oregon address as a permanent address other than the former and current home addresses of the accused. John Slattum did not live at either of those addresses at any time. We give no weight to John Slattum's Oregon driver license as an indication that he was an Oregon resident because, again, he listed the accused's home address as his own. At most, the evidence suggests that John Slattum intended to become an Oregon resident sometime in the future.

With that evidence in mind, we conclude that the accused's actions in assisting in the registration of the motor home violated DR 1-102(A)(3). Oregon law requires that vehicle registration forms contain the residence address of the registrant. The form that the accused submitted did not contain a residence address. Although listing the accused's home address as the Slattums' mailing address might not be dishonest in and of itself, it was at least misleading when combined with the fact that the form contained no residence address or county of residence. The information both supplied and omitted implied that the Slattums were Oregon residents who were entitled to register the motor home in Oregon. Further, the accused's statements at the trial panel hearing support the conclusion that he knew that his conduct was wrongful:

> "I still believe it was wrong. * * * I guess I made some assumptions that [John Slattum] had an arguable issue that he could make, that his domicile was in Oregon even

though his wife's wasn't. * * * I'm not saying that doesn't necessarily involve a violation of the rules, but I am saying it doesn't involve the rules of advising a client to engage in that conduct.

"* * * * *

"As far as the actual delivery of the document, as I said in opening, in hindsight, I shouldn't have done that and agree. And, actually, I think that there is enough here that you could find a violation of DR [1-102(A)(3)].

"* * * * *

"My point is that violation was of DR [1-102(A)(3)], which is misconduct. DR 7-102 deals with the relationships with clients, assisting or advising a client to do something. I am not arguing that you cannot find me guilty of DR [1-102(A)(3)]."

Accordingly, we agree with the trial panel that the Bar proved by clear and convincing evidence that the accused violated DR 1-102(A)(3).

■    We now turn to the Bar's argument that the accused was acting as the Slattums' lawyer during the events in question and, therefore, violated DR 7-102(A)(7) in addition to DR 1-102(A)(3). The Bar notes that, until the trial panel hearing, the accused had refused to respond to the Bar's inquiries about the motor home registration, invoking the lawyer-client privilege. The Bar argues that the invocation of that privilege constitutes an admission that a lawyer-client relationship existed and that the accused should be bound by that admission.

As noted above, the accused replies that he asserted the lawyer-client privilege in response to the Bar's investigation of the motor home registration because his communications with the Slattums, although not those of a lawyer and client when they occurred, constituted "secrets" that he could not divulge under DR 4-101 due to their *subsequent* lawyer-client relationship.

The issue is whether the accused's assertion of the lawyer-client privilege in 2000, as to communications and information related to a 1996 transaction, provides a sufficient basis to conclude that he was acting as a lawyer for one

or both of the Slattums in 1996. We agree with the Bar that the accused's assertion of the lawyer-client privilege is some evidence of the existence of a lawyer-client relationship in 1996, at the time of the communications. Indeed, if the record were devoid of any other evidence on that issue, the accused's assertion of the privilege would have provided a sufficient basis for the trial panel to conclude that the accused was acting as the Slattums' lawyer in 1996.

At the hearing, however, the accused testified that he was not a lawyer for either of the Slattums in 1996. He stated that he asserted the privilege because he believed that his subsequent lawyer-client relationship with John Slattum, in 1998, required him to protect "secrets" that he had learned in 1996 regarding the Slattums' actions then. The accused's interpretation of the lawyer-client privilege is incorrect. A lawyer has a duty to protect client "secrets," a term that is not limited to matters covered by the lawyer-client privilege. *See State v. Keenan / Waller*, 307 Or 515, 519, 771 P2d 244 (1989) (DR 4-101(A) "does not confine the client's 'secrets' to communications; indeed, they may reach the attorney from someone other than the client"). However, the duty applies only to "information gained in a current or former professional relationship." DR 4-101(A). In the context of the disciplinary rules, "professional relationship" means a lawyer-client relationship. If we accept as true the accused's testimony that he was not acting as the Slattums' lawyer in 1996, the information that he obtained then regarding the motor home registration cannot be a "secret" that the accused had a duty to protect. The accused's assertion of the lawyer-client privilege in response to the Bar's inquiries about the Slattum matter finds no support either in the text of the rule itself or in this court's cases. However, that conclusion does not end the inquiry in this case.

The Bar presented no evidence, other than the accused's assertion in 2000 of the lawyer-client privilege, that the accused was acting as the Slattums' lawyer when he assisted them in registering the vehicle in Oregon in 1996. As noted above, there was no basis for that assertion. Moreover, there is other evidence in the record regarding the motor home registration, all of which suggests that the accused was not acting as the Slattums' lawyer in connection with that

transaction. For example, John Slattum wrote a check to the accused for the filing fees; the accused deposited that check in his personal account and then wrote a check to DMV from that account, rather than using his business account. The accused's testimony that he was not acting as the Slattums' lawyer in 1996 is consistent with the other evidence in the record. For those reasons, we agree with the trial panel that the Bar failed to prove by clear and convincing evidence that the accused violated DR 7-102(A)(7).

## B. *Gibson Matter*

The Bar argues that the trial panel erred in concluding that the accused did not violate DR 9-101(C)(4) because that rule, according to the Bar, should be interpreted to apply both to clients and to prospective clients. The Bar relies on Rule 503 of the Oregon Evidence Code (OEC),[8] which deals with the lawyer-client privilege. That rule identifies those persons who may invoke the lawyer-client privilege and specifically includes persons who consult a lawyer "with a view to obtaining professional legal services from the lawyer." The Bar argues that, if this court does not interpret DR 9-101(C)(4) similarly to apply to such prospective clients, lawyers will have no ethical duty to return the property of persons whom they have decided not to represent. That result, in the Bar's view, is not equitable or desirable.

DR 9-101(C)(4) provides that a lawyer must "[p]romptly pay or deliver *to a client* as requested by the client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive." (Emphasis added.) In this case, the "properties" were the documents Gibson had left with the accused to assist him in determining whether to represent Gibson. The accused argued, and the trial panel agreed, that the accused did not violate DR 9-101(C)(4) when his legal assistant shredded the documents because that rule applies only to the "funds, securities or other properties" of a "client," and Gibson merely was a "prospective" client. To find a violation of the rule here, the

---

[8] OEC 503 provides, in part:

" 'Client' means a person * * * who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer."

accused asserts, this court would have to rewrite DR 9-101(C)(4) to insert the word "prospective."

■       We disagree. When a person delivers "funds, securities or other properties" to a lawyer who is considering whether to represent that person, the person has entrusted those materials to the lawyer as a lawyer and, as such, is as much entitled to be considered a "client" for that limited purpose as if the person had made a confidential, verbal communication to the lawyer. In the latter case, the confidential communication is protected by the lawyer-client privilege because, as noted above, the Oregon Evidence Code defines "client," for purposes of the lawyer-client privilege, to include, among others, a person "who consults a lawyer with a view to obtaining professional legal services from the lawyer." OEC 503(1)(a). Although the legislature's definition of "client" in OEC 503 does not control our interpretation of that word as it is used in DR 9-101(C)(4), we agree with the Bar that it is helpful in interpreting that disciplinary rule and that the proper application of DR 9-101(C)(4) requires that it apply to one who consults with a lawyer with a view to obtaining professional services from the lawyer, as Gibson did here.

That conclusion is consistent with other cases holding that whether a "putative client intended that the [lawyer-client] relationship be created" is evidence of the existence of such a relationship. *In re Weidner*, 310 Or 757, 768, 801 P2d 828 (1990); *see also The Ethical Oregon Lawyer* § 6.3 (Oregon CLE 1991) ("The modern trend in Oregon and elsewhere is to find the existence of an attorney-client relationship whenever the would-be client reasonably believes under the circumstances that the client is entitled to look to the lawyer for advice."). Here, Gibson delivered documents to the accused in the course of seeking legal advice from him. It was reasonable for her to believe that he would return the documents to her upon request.

The accused argues that, because DR 9-101(C)(4) uses the word "client," but not the word "prospective," the rule cannot be interpreted to apply to Gibson. The accused misses the point. Our holding does not expand the rule to include all persons who might conceivably be considered "prospective" clients. The universe of "prospective" clients is

potentially limitless, and Gibson was not simply a "prospective client." She delivered documents to the accused in the course of seeking professional legal services from him. Although the accused ultimately decided not to represent Gibson, when the accused accepted Gibson's documents for review to make that decision, Gibson became the accused's "client" for purposes of DR 9-101(C)(4). As such, the accused had a duty to safeguard Gibson's documents and return them to her upon request, just as he would have been required to safeguard and return "funds" or "securities" received from an individual seeking legal advice before he had determined whether to represent that person. Here, the accused failed to return Gibson's documents because his legal assistant had destroyed them. We hold that, for the limited purposes of DR 9-101(C)(4), Gibson *was* a client and, by failing to return to her, upon her request, property that she was "entitled to receive," the accused violated that rule.[9]

## III. SANCTION

The trial panel suspended the accused from the practice of law for 60 days. In making its decision, the panel concluded that the accused's fraudulent conduct in the Slattum matter (1) deprived California and San Diego County of revenues of more than $20,000; (2) subjected the Slattums to potential prosecution for a Class A misdemeanor under ORS 803.375; and (3) caused the accused's former wife to be anxious over her own potential criminal liability because the Slattums were using her home address to register their motor home. Because the trial panel found no violation of DR 9-101(C)(4), the panel based its sanction solely on the accused's violation of DR 1-102(A)(3). Although we agree with the Bar that the accused violated DR 9-101(C)(4) in addition to DR 1-102(A)(3), for the reasons that follow, we nevertheless agree that the 60-day suspension that the trial panel ordered is appropriate.

In determining an appropriate sanction, this court refers to the American Bar Association's *Standards for*

---

[9] It should be apparent from this discussion that this interpretation of the word "client" applies only to DR 9-101(C)(4) and not necessarily to other disciplinary rules that use the word "client."

*Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards). *In re Gustafson*, 333 Or 468, 486, 41 P3d 1063 (2002). The ABA Standards provide that, when imposing sanctions, the court should consider the following factors: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standard 3.0.

By engaging in conduct that involved dishonesty and misrepresentation in the Slattum matter, the accused violated his duty to the public to maintain his personal integrity. *In re Unrein*, 323 Or 285, 288, 917 P2d 1022 (1996). The accused's conduct was intentional. A lawyer acts intentionally "when the lawyer acts with the conscious objective or purpose to accomplish a particular result." ABA Standards at 6. The accused submitted the DMV registration form containing a misrepresentation for the purpose of obtaining the registration for the Slattums. The State of California and San Diego County were injured by the accused's actions, in that they were wrongfully deprived of more than $20,000 in taxes and fees from the Slattums.

In the Gibson matter, the accused violated his duty to Gibson to return to her, upon her request, documents that she was entitled to receive. Gibson's documents were destroyed by a legal assistant who was under the accused's supervision. We, therefore, conclude that the accused acted negligently, rather than intentionally, in dealing with Gibson's documents. Gibson was injured, although not severely, because of the time and cost involved in obtaining other copies of the various documents she gave to the accused.

Regarding the aggravating and mitigating circumstances, we agree with the trial panel's findings. The panel identified two aggravating factors: (1) refusal to acknowledge the wrongful nature of the conduct, and (2) substantial experience in the practice of law. The panel also identified two mitigating factors: (1) absence of a prior disciplinary record, and (2) the Bar's delay in bringing the matter to a hearing. Because we agree with the Bar that the accused also violated DR 9-101(C)(4), based on clear and convincing evidence in

the record, we find that the following additional aggravating factors are present: (1) multiple offenses (ABA Standard 9.22(d)); (2) refusal to acknowledge the wrongful nature of his conduct in the Gibson matter (ABA Standard 9.22(g)); and (3) Gibson's vulnerability (ABA Standard 9.22(h)).

Turning to the specific sanction, the ABA Standards provide the following guidance for sanctions for conduct involving dishonesty, fraud, deceit, or misrepresentation:

> "Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements [requiring disbarment] and that seriously adversely reflects on the lawyer's fitness to practice law."

ABA Standard 5.12

> "Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law."

ABA Standard 5.13.

As to the destruction of client property, ABA Standard 4.13 provides, "Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client." The commentary to that section states that a reprimand is "appropriate when a lawyer is negligent in training or supervising his or her office staff concerning proper procedures for handling client funds." Although client documents, rather than funds, were involved here, the commentary appears applicable in these circumstances. Standing alone, the accused's violation of DR 9-101(C)(4) would warrant a reprimand.

We find that the accused's conduct, as described in this opinion, warrants suspension. He assisted the Slattums in making a misrepresentation to Oregon DMV. The Slattums' misrepresentation also likely constituted a crime.[10]

---

[10] ORS 803.375 provides, in part:

"(1) A person commits the offense of false application for vehicle registration if the person does any of the following:

"(a) Knowingly makes any false statement or representation with respect to any facts required to be set forth in any application for registration."

Although the accused received no personal financial benefit, he secured a significant financial benefit for a friend and business partner, who later would become a client. The continuing nature of the registration violation seriously adversely reflects on the accused's fitness to practice law.

A review of our case law supports our conclusion that suspension is the appropriate sanction. The trial panel concluded that a 60-day suspension was an appropriate sanction based on three of this court's cases in which lawyers who had engaged in similar misconduct received a suspension of similar length. *See In re Dinerman*, 314 Or 308, 840 P2d 50 (1992) (knowingly making false statements to assist client; 63-day suspension); *In re Magar*, 312 Or 139, 817 P2d 289 (1991) (endorsing draft with another's name; 60-day suspension); *In re Hockett*, 303 Or 150, 734 P2d 877 (1987) (fraudulent property transfers on behalf of client; 63-day suspension).

The accused argues that, if he did violate DR 1-102(A)(3), a 60-day suspension is excessive and that, instead, he should receive a public reprimand. Because the trial panel concluded that the accused had not violated a disciplinary rule in his capacity as a lawyer, the accused argues, this court should be guided by its decisions in *In re Fulop*, 297 Or 354, 685 P2d 414 (1984), and *In re Flannery*, 334 Or 224, 47 P3d 891 (2002), in which this court determined that public reprimands were appropriate sanctions for violations of DR 1-102(A)(3).

The cases upon which the accused relies to argue that a suspension is excessive are distinguishable. In *Fulop*, the accused lawyer was found to have engaged in deceitful and fraudulent conduct not involving a client. He received a public reprimand for aiding a friend's attempt to avoid a lien on property. In that case, however, the accused, after taking steps to perpetrate the fraud, ultimately decided not to create the fraudulent documents. Here, the accused did file the DMV registration form containing the misrepresentation. In *Flannery*, the accused lawyer, a resident of Washington, received a public reprimand for using a friend's Oregon address as his address to obtain a renewed Oregon driver license. This court found two mitigating factors in *Flannery*

that are not present in this proceeding. First, Flannery admitted wrongdoing from the outset and fully cooperated with the Bar's investigation. Second, Flannery was subject to other punishment: he lost his job. Furthermore, unlike the accused, Flannery did not obtain a financial benefit for himself or anyone else. We conclude that this case is more similar to *Dinerman*, *Magar*, and *Hockett* than to the cases just discussed, and we agree with the trial panel that a 60-day suspension is appropriate.

The accused is suspended from the practice of law for a period of 60 days, commencing 60 days from the filing of this decision.