On review of recommendation of State Professional Responsibility Board filed October 15, 2010, accused suspended from practice of law for period of nine months, commencing 60 days from date of decision April 7, 2011.

In re the Reciprocal Discipline of

ANTHONY ROBERT LOPEZ, JR.,
*Accused.*

(OSB 10-64; SC S058869)

252 P3d 312

Allison D. Rhodes, Hinshaw & Culbertson, LLP, Portland, filed a memorandum on behalf of the Accused.

Susan Roedl Cournoyer, Assistant Disciplinary Counsel, Tigard, filed a memorandum on behalf of the Oregon State Bar.

Before De Muniz, Chief Justice, and Durham, Balmer, Kistler, Walters, Linder, and Landau, Justices.*

PER CURIAM

_____

* Gillette, J., retired December 31, 2010, and did not participate in the decision of this case.

## PER CURIAM

This is a reciprocal discipline proceeding pursuant to Oregon State Bar Rule of Procedure (BR) 3.5. The accused is licensed to practice law in both California and Oregon.[1] While practicing law in California, he repeatedly violated that state's rules of professional conduct. The accused entered into a stipulation with the California State Bar and, based on that stipulation, the California Supreme Court suspended his license to practice law for one year. The court, however, stayed the suspension on the condition that the accused serve 90 days of the suspension and successfully complete a one-year probation.[2] Pursuant to BR 3.5(a), the Oregon State Bar notified this court that California had disciplined the accused. The Bar recommended that we impose the same sanction that the California Supreme Court did. For the reasons that follow, we suspend the accused's license to practice law in Oregon for nine months.

In a reciprocal discipline proceeding, the question whether to impose a sanction turns on two issues:

"(1)   Was the procedure in the jurisdiction which disciplined the attorney lacking in notice or opportunity to be heard?

"(2)   Should the attorney be disciplined by [this] court?"

BR 3.5(c). In this case, the accused concedes that the California disciplinary proceeding provided him with notice and an opportunity to be heard, and he does not dispute that this court should discipline him for his misconduct in California. Rather, he joins in the Bar's recommendation that Oregon's sanction should be coextensive with California's. In light of the accused's concessions, our sole task is to determine the appropriate sanction. We begin by summarizing the conduct that gave rise to this proceeding. We take the facts from the stipulation before the California Supreme Court.

---

[1] It appears from the record that, at least at some point, the accused also has been licensed to practice law in Arizona and Nevada.

[2] The parties inform us that the accused has successfully completed his one-year probation.

The accused's misconduct spans seven client-related matters and one advertising matter. We summarize each matter:

**The first matter.** The accused represented a woman and her three minor children in a personal injury action. In the course of that representation, he settled the children's claims without obtaining court approval, as California law requires; he waited for over one year before distributing the proceeds of the settlement; and he deducted his fee and the children's medical expenses without first obtaining court approval, as California law also requires. Finally, the accused charged the woman a fee that exceeded local court guidelines.[3] The accused does not dispute that his conduct violated Oregon Rule of Professional Conduct (RPC) 1.15-1(d) (a lawyer must promptly deliver client funds), RPC 1.5 (a lawyer must not collect an illegal fee), and RPC 8.4(a)(4) (a lawyer must not engage in conduct that is prejudicial to the administration of justice).

**The second matter.** After settling a personal injury claim, the accused received the settlement proceeds and distributed a portion of those proceeds to his client. The accused included a disbursement sheet, accounting for the portion of settlement funds that he had deducted from the gross amount in order to pay certain fees and expenses. The sheet incorrectly represented that some of the client's medical expenses had been reduced, and it also failed to account for two liens that encumbered the settlement proceeds. The accused waited longer than one year to satisfy the two liens. The accused does not dispute that his conduct violated RPC 1.4(b) (a lawyer must explain a matter sufficiently to permit the client to make informed decisions) and RPC 1.15-1(d) (a lawyer must promptly deliver funds due to a third party).

**The third matter.** In the course of representing a third client, the accused failed to notify his client of the adverse party's written offers of settlement. Additionally, in that case, although the accused acknowledged the full amount due on a medical lien, he sent the lienholder a check

---

[3] The accused eventually refunded the fee to the extent that it exceeded the guidelines.

for a quarter of the total amount; the check bore the stamp "[f]ull & [f]inal [s]atisfaction [p]ayment." The accused then delayed for over one year before fully satisfying that lien. The accused does not dispute that his conduct violated RPC 1.4(a) (a lawyer must keep a client reasonably informed about a matter), RPC 1.4(b) (a lawyer must explain a matter sufficiently to permit the client to make informed decisions), and RPC 1.15-1(d) (a lawyer must promptly deliver funds due to a third party).

**The fourth matter.** In another personal injury case, the accused settled the claims of three clients for less than their medical bills. Before distributing the settlement funds, the accused asked his clients' medical providers to reduce their bills. When they refused, the accused failed to negotiate further with the medical providers. Twenty-one months later, one of the accused's client's received a collection notice from one of the medical providers. The accused continued to delay after his client received the collection notice, waiting 10 more months before filing an interpleader action to resolve the various claims to the settlement proceeds. The accused does not dispute that his conduct violated RPC 1.1 (a lawyer must provide competent representation to a client).

**The fifth and sixth matters.** The fifth matter involved one client; the sixth, two clients. In both matters, the accused failed to explain adequately to his non-English-speaking clients how settlement funds would be disbursed and the amounts that each client would receive. The accused does not dispute that, with respect to both matters, he violated RPC 1.4(b) (a lawyer must explain a matter sufficiently to permit the client to make informed decisions).

**The seventh matter.** In the seventh matter, the accused settled a personal injury claim on behalf of a client and the client's three minor children. The accused settled two of the children's claims without obtaining court approval. When he received the settlement funds, the accused first deducted a quarter of the proceeds as a fee, contrary to a California law that requires a court order approving such a payment. The accused does not dispute that his conduct violated RPC 1.5 (a lawyer must not collect an illegal fee) and

RPC 8.4(a)(4) (a lawyer must not engage in conduct that is prejudicial to the administration of justice).

**The eighth matter.** The eighth matter involves an advertisement that the accused aired in Nevada. The advertisement, translated from the Spanish, stated, "If you have had an auto accident, by law you have the right to receive at least $15,000 for your case. Call the offices of [the accused.]" The accused does not dispute that his advertisement created a misleading impression concerning the results that he could obtain and that the advertisement accordingly violated RPC 7.1(a)(2) (a lawyer must not make a communication about the lawyer's services that is intended or is reasonably likely to create a false or misleading expectation about the result that the lawyer can achieve).

Based on that misconduct, the California Supreme Court suspended the accused's license to practice law for one year, but it stayed imposition of that suspension subject to the accused's serving 90 days of actual suspension and successfully completing a year-long probation. In notifying this court of discipline in another jurisdiction, the Bar recommended, and the accused agreed, that we impose the same sanction that California had. Given the accused's record of prior discipline, which we discuss below, and the repeated instances of misconduct that gave rise to this proceeding, we asked the Bar and the accused to explain how the proposed sanction would protect Oregon clients and the public.

Both parties responded to our inquiry. The Bar admitted that its recommended sanction might not be sufficient. It suggested, however, that this court's prior practice in reciprocal discipline proceedings has been to impose the same sanction that the other jurisdiction did. The Bar also suggested that completion of the accused's California probation—which included taking a legal ethics examination and completing courses in law practice management—could have a rehabilitative effect that would protect the accused's Oregon clients and the public. For his part, the accused agreed with the Bar's observation that this court follows the sanction imposed in the other jurisdiction and also emphasized the rehabilitative value of his probation.

In reciprocal discipline cases, this court has an independent obligation to determine the sanction merited by a lawyer's violation of this state's professional rules. *See In re Page*, 326 Or 572, 577, 955 P2d 239 (1998) (this court's "choice of a sanction vindicates the judicial authority of this jurisdiction, not of the one in which the earlier discipline occurred," quoting *In re Devers*, 317 Or 261, 265, 855 P2d 617 (1993)). As a factual matter, this court frequently has found that the sanction that another jurisdiction has imposed is sufficient to vindicate Oregon's interests. We are, however, free to impose a different sanction, if appropriate, and on occasion have done so. *See Page*, 326 Or at 574 (Washington formally reprimanded the accused; this court suspended her for 30 days); *Devers*, 317 Or at 263 (Michigan suspended the accused for four months; this court suspended him for six months).

With the foregoing in mind, we turn to the determination of the appropriate sanction, which includes consideration of both the American Bar Association's *Standards for Imposing Lawyer Sanctions* (2005) (ABA Standards) and this court's cases. *See Page*, 326 Or at 577 (so noting). The ABA Standards direct courts to examine four factors in determining the appropriate sanction for a lawyer's professional misconduct: (1) the ethical duty violated, (2) the lawyer's mental state, (3) the actual or potential injury caused by the lawyer's misconduct, and (4) the existence of aggravating or mitigating circumstances. *Id.* at 577; *Devers*, 317 Or at 267.

The accused violated the duties that he owed to his clients when he mishandled their property, failed to represent them competently, and failed to provide them with complete and accurate information. *See* ABA Standards 4.1, 4.5, 4.6 (noting duties owed to clients). The accused violated his duty as an officer of the court when he failed to obtain the court approval required by law to settle certain of his clients' claims and to deduct his fee from those settlement proceeds. *See* ABA Standard 6.2 (noting duty to obey the obligations imposed by a tribunal's rules). Finally, the accused violated his duty to the legal profession when he aired an illegal advertisement. *See* ABA Standard 7.0.

In the stipulation before the California Supreme Court, the accused admitted that each instance of his misconduct, except for one, was a "willful" violation of California law.[4] Under California law,

> "to establish a willful breach of the Rules of Professional Conduct, '[I]t must be demonstrated that the person charged acted or omitted to act purposely, that is, that he knew what he was doing or not doing and that he intended either to commit the act or to abstain from committing it.' "

*King v. State Bar of Cal.*, 801 P2d 419, 423 (1990) (alteration in original; quoting *Zitny v. State Bar of Cal.*, 415 P2d 521, 524 (1966)). Under California law, a lawyer need not know that his or her conduct violates a specific ethical standard for it to be "willful." *King*, 801 P2d at 423. It is sufficient if the lawyer is aware of what he or she is doing and intends to do it. *Id.* As we read the California cases, the accused's stipulation that his conduct was "willful" means that, at a minimum, he acted knowingly under the ABA Standards. *See* ABA Standards at 13 (defining the mental state of "[k]nowledge" as the "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result"). Given the accused's stipulation, we find that the accused acted knowingly with respect to all but one of the charged instances of misconduct.

For the most part, the stipulation does not identify any concrete economic harm that the accused's clients suffered as a result of the accused's misconduct. Rather, the accused's failure to communicate adequately with his clients and his failure to pursue diligently the prosecution and resolution of their cases exposed his clients to potential economic injury. We note, however, that the accused's clients suffered actual injury in the first matter when they paid the accused an excessive fee, even though the accused ultimately mitigated that injury by refunding the excess. *Compare In re*

---

[4] The accused did not stipulate that he willfully violated California law in handling the second matter discussed above—*viz.*, when he incorrectly represented on a disbursement sheet that some of his client's medical expenses had been reduced and, on that same disbursement sheet, failed to account for two liens that encumbered his client's settlement proceeds.

*Wyllie*, 331 Or 606, 622, 19 P3d 338 (2001) (clients suffered an actual injury when their lawyer collected an excessive fee from them), *with In re Knappenberger*, 344 Or 559, 573-74, 186 P3d 272 (2008) (clients suffered potential injury when their lawyer charged but did not collect an excessive fee). Finally, this court has held that a lawyer's failure to communicate adequately with a client can be an ascertainable injury "measured in terms of time, anxiety, and aggravation" to the client. *In re Koch*, 345 Or 444, 456, 198 P3d 910 (2008).

Considering the nature of the accused's ethical violations, his mental state, and the injuries to which he exposed his clients, we conclude tentatively that a suspension is the proper sanction in this case for all but two of the instances of misconduct. *See* ABA Standard 4.12 (suspension is generally appropriate when a lawyer knowingly deals improperly with client property and causes injury or potential injury to a client); ABA Standard 6.22 (suspension is generally appropriate when a lawyer knowingly violates a court rule and causes potential injury); ABA Standard 7.2 (suspension is generally appropriate where a lawyer knowingly engages in conduct that violates a duty owed as a professional). The ABA Standards suggest that a reprimand generally would be appropriate for two instances of the accused's misconduct, if those instances of misconduct stood alone. *See* ABA Standards 4.5, 4.6.[5]

We also consider aggravating and mitigating factors to which the parties have stipulated or that the record otherwise supports. *See Page*, 326 Or at 579-80 (acknowledging stipulated factors and finding additional ones). Here, the parties stipulated that the accused's prior discipline was an

---

[5] Under ABA Standard 4.5, the propriety of a suspension or reprimand turns on whether the lawyer knowingly or negligently engaged in an area of practice in which he or she was not competent. In this case, the accused's incompetence did not extend to an area of practice; rather, he knowingly failed to file an interpleader action in a timely manner—something that he does not dispute a competent attorney would have done. In a similar vein, ABA Standard 4.6 suggests suspending a lawyer's license where the lawyer "knowingly deceives" a client, but suggests that a reprimand is appropriate where the lawyer "negligently fails to provide a client with accurate or complete information * * *." Here, the accused *knowingly* failed to communicate adequately with some of his clients, but nothing suggests that he purposefully sought to deceive them. Although neither standard provides a perfect match to the accused's conduct, they suggest that a reprimand would be appropriate if those were the accused's only violations.

aggravating factor. *See* ABA Standard 9.22(a) (prior miscon-
duct is an aggravating factor). On that issue, the California
Supreme Court previously had sanctioned the accused after
he failed to maintain client funds in his trust account and
failed to account properly for his client's funds. For that dis-
ciplinary violation, the accused received a one-year suspen-
sion, which was stayed in its entirety subject to the accused's
successful completion of one year of probation.[6]

In addition, because the accused engaged in similar
misconduct over the span of the seven client-related matters
involved here, we also find the aggravating factors of multi-
ple offenses, ABA Standard 9.22(d), and a pattern of miscon-
duct, ABA Standard 9.22(c). Because the accused has been a
member of the California Bar for over 20 years, his substan-
tial experience in the practice of law is also an aggravating
factor. *See* ABA Standard 9.22(i); *In re Eakin*, 334 Or 238,
258, 48 P3d 147 (2002) (finding substantial experience where
the accused had been practicing for more than 20 years).
Finally, we note that the accused's advertisement was aimed
at non-English-speaking clients—a group that might be more
dependent on their lawyer to protect their interests and thus
more vulnerable to the sort of misconduct in which the
accused has engaged. *See* ABA Standard 9.2(h) (identifying
the vulnerability of the clients as an aggravating factor).

The parties did not stipulate to any mitigating fac-
tors. However, the imposition of sanctions in another juris-
diction for the same misconduct is a mitigating factor that is
always present in a reciprocal discipline proceeding. *See* ABA
Standard 9.32(k) (identifying "imposition of other penalties
or sanctions" as a mitigating factor); *Page*, 326 Or at 579-80.
Considering those factors, we note that not only has the
accused engaged in repeated instances of multiple types of
misconduct but also that his prior disciplinary sanction,
which consisted of a one-year probation, does not appear to
have deterred the accused's commission of other violations.
Given the prior disciplinary sanction, we are not persuaded

---

[6] The accused's prior misconduct occurred in Arizona. California imposed
reciprocal discipline for that misconduct. The record does not reveal what disci-
pline the Arizona disciplinary authority had imposed.

that either the 90-day actual suspension or the one-year probation that the California Supreme Court recently imposed will have as great a rehabilitative effect as the accused argues. Considering the aggravating and mitigating factors, we conclude tentatively that a longer period of actual suspension than the California Supreme Court imposed is appropriate.

In determining the appropriate sanction, we also consider this court's decisions in comparable cases. Taken individually, most instances of the accused's misconduct would merit a 30- to 60-day suspension. *See In re Snyder*, 348 Or 307, 323-24, 232 P3d 952 (2010) (suspending the accused for 30 days where he failed, in a single-client matter, to communicate adequately and pay client funds promptly); *In re Knappenberger*, 337 Or 15, 32-33, 90 P3d 614 (2004) (suspending the accused for a total of 90 days and noting that the lawyer's neglect of a single client's legal matter merited a 60-day suspension where the aggravating factors outweighed the mitigating factors); *Eakin*, 334 Or at 259 (suspending the accused for 60 days where she mishandled one client's property).

Longer periods of suspension are appropriate where the number of violations and the number of clients potentially harmed increase. In *Devers*, this court imposed a six-month suspension for multiple instances of misconduct spanning three client-related matters. 317 Or at 267-68. The lawyer in *Devers* had a more extensive history of prior disciplinary action, although the prior misconduct had merited less onerous sanctions. *See id.* at 263-64 (noting that Devers' disciplinary history consisted of two prior reprimands and one prior admonishment). Additionally, the misconduct in *Devers* resulted in economic harm to some of the clients. *See id.* at 266 (lawyer had collected a clearly excessive fee). By contrast, the accused has had only one prior disciplinary violation, and the accused refunded the excessive fee that he collected and thus mitigated the harm that he caused by collecting the fee. The accused, however, violated the Rules of Professional Conduct in handling seven client matters, as opposed to three in *Devers*, and in engaging in misleading advertising.

Not only has the accused's misconduct spanned seven client matters, but, in handling some of those matters, the accused committed multiple ethical violations. For example, in one matter, the accused failed to communicate settlement offers to his client, and, once the case settled, delayed for a year in disbursing the settlement proceeds. In another matter, the accused settled the case and deducted his fee without court approval, as California law requires, and he charged an excessive fee that he later had to refund. The other five matters were variations on the two matters noted.

Considering the multiple instances of misconduct in which the accused has engaged over a span of seven clients, his prior disciplinary sanction, and the fact that the accused acted knowingly when he committed almost all the instances of misconduct, we suspend the accused from the practice of law in Oregon for a period of nine months. Unlike California, we do not stay any part of that period of suspension.

The accused is suspended from the practice of law for a period of nine months, commencing 60 days from the date of this decision.