Filed:  October 11, 2012

IN THE SUPREME COURT OF THE STATE OF OREGON

In re The Reciprocal Discipline of

EVERETT WALTON,

Accused.

(OSB 12-70; SC S060606)

En Banc

On a BR 3.5 notice of discipline in another jurisdiction and recommendation filed August 6, 2012.

Linn D. Davis, Assistant Disciplinary Counsel, Oregon State Bar, filed the notice of discipline in another jurisdiction and recommendation and reply.

Everett Walton, *pro se*, Hilo, Hawaii, filed the answer to BR 3.5 notice of discipline in another jurisdiction and recommendation.

PER CURIAM

The accused is publicly reprimanded.

PER CURIAM

This is a reciprocal discipline proceeding pursuant to Oregon State Bar Rule of Procedure (BR) 3.5. The accused is licensed to practice law in Oregon and in the State of Hawai'i. For approximately 14 months, the accused improperly used a Westlaw account password that belonged to the Republic of Palau, in violation of the Hawai'i Rules of Professional Conduct (HRPC). The accused entered into a stipulation for discipline with the Hawai'i Office of Disciplinary Counsel. Based on that stipulation, the Disciplinary Board of the Hawai'i Supreme Court imposed a public reprimand.

In March 2012, Hawai'i's Disciplinary Counsel provided the order and stipulation to the Oregon State Bar, which, in turn, invited the accused to respond and provide any additional information that he wished this court to consider in deciding reciprocal discipline. The accused submitted a reply and several exhibits. In August 2012, the Bar notified this court, under BR 3.5(a),[1] that Hawai'i had disciplined the accused, and it recommended that the accused be suspended from the practice of law in

---

[1]    BR 3.5(a) provides:

"Disciplinary Counsel, after reporting on the matter to the [State Performance and Responsibility Board (]SPRB[)], shall promptly notify the court after receiving notice that an attorney has been disciplined for misconduct in another jurisdiction. Disciplinary Counsel shall file a copy of the judgment, order or determination of discipline with the court, with written notice to the attorney. * * * The judgment or order or determination of discipline shall be accompanied by a recommendation of the SPRB as to the imposition of discipline in Oregon based on the discipline in the jurisdiction whose action is reported to the court, and such other information as the Bar deems appropriate to file with the court."

1

Oregon for six months. For the reasons stated below, we reject the Bar's recommendation and, instead, publicly reprimand the accused.

In a reciprocal discipline proceeding, the order of discipline from another jurisdiction is sufficient evidence that the accused lawyer committed the misconduct described therein. BR 3.5(b) (so stating). Whether this court should impose discipline turns on two questions:

"(1) Was the procedure in the jurisdiction which disciplined the attorney lacking in notice or opportunity to be heard?

"(2) Should the attorney be disciplined by the court?"

BR 3.5(c). In this case, the accused does not dispute that the Hawai'i disciplinary proceeding provided him with notice and an opportunity to be heard, or that this court should discipline him for his misconduct in Hawai'i. Rather, he contends only that the appropriate sanction for his misconduct is a private reprimand. This court has rejected the practice of imposing a private reprimand, as distinguished from a public reprimand. *See In re Zumwalt*, 296 Or 631, 634 n 5, 678 P2d 1207 (1984) (so holding). If the court imposes a reprimand, it is public. *Id.*; BR 6.1(a)(ii).

This court determines whether it should discipline an accused lawyer and in what manner after reviewing the judgment from the other state and the parties' submissions. BR 3.5(e);[2] *In re Coggins*, 338 Or 480, 483, 11 P3d 1119 (2005). We

[2] BR 3.5(e) provides, in part:

"Upon review of the judgment, order or determination of discipline and the response and answer filed by the attorney and the Bar, and after oral

therefore take the following facts from the Hawai'i stipulation for discipline and the accused's responses to the Bar and this court.

The accused has been practicing law since 1977. In early 2001, the accused was appointed Special Prosecutor for the Republic of Palau Office of the Special Prosecutor (OSP). In March 2007, while still holding that position, the accused entered into a three-year contract on OSP's behalf with Thomson Reuters Corporation for Internet legal research services, known as Westlaw. Under that contract, OSP agreed to pay a flat rate of about $1,170 per month for unlimited access to Westlaw until May 31, 2010. The contract included the following provision:

"In the event Subscriber requests a Minimum Term in excess of one year as set forth in the Order Form, this Agreement may not be terminated prior to the expiration of such minimum term."

The accused received two passwords that gave him access to OSP's Westlaw account.

In March 2008, the accused resigned from his employment as special prosecutor for OSP. Before leaving that position, and knowing that, under the Republic of Palau's hiring system, the position would remain unfilled for at least nine months, the accused contacted Thomson Reuters in an effort to cancel the Westlaw contract. A Thomson Reuters representative informed the accused that the company would not agree to terminate the contract for any reason before the May 2010 expiration date, whether or

argument if ordered by the court, the court shall determine whether the attorney should be disciplined in Oregon for misconduct in another jurisdiction and if so, in what manner."

3

not the account was used, because the monthly charges for the three-year contract were substantially discounted from the cost of a one-year contract.

The accused left Palau, returned to Hawai'i, and began work as the managing attorney for the Hilo office of the Legal Aid Society of Hawai'i. The accused continued to use OSP's Westlaw password while representing indigent clients in that office. He did not seek authorization from OSP or the Republic of Palau to do so. During that time, OSP continued to receive monthly statements from Thomson Reuters, which detailed the accused's monthly usage of the Westlaw account. OSP forwarded those statements to the Director of the Bureau of National Treasury of the Ministry of Finance of the Republic of Palau, which, in turn, paid them.

In February 2009, the Republic of Palau named a new special prosecutor. In April 2009, the new special prosecutor attempted to cancel the Westlaw contract. Thomson Retuers denied the request to terminate the contract.[3] In May 2009, a secretary in the special prosecutor's office informed the accused by e-mail that the new special prosecutor was considering filing civil and criminal charges, as well as a Bar complaint, against the accused for his unauthorized use of OSP's Westlaw account. The accused immediately stopped using the account.

In July 2009, the new special prosecutor filed a complaint with the Hawai'i Office of Disciplinary Counsel, alleging that, without any authorization to do so, the

---

[3] The new special prosecutor stopped paying the Westlaw bills, and Thomson Reuters ultimately terminated the contract for nonpayment in August 2009.

accused illegally had accessed and used OSP's Westlaw account for his personal use after he had left the position of special prosecutor. The complaint further alleged that the accused's conduct had caused the Republic of Palau more than $20,000 in economic damages and that the value of the Westlaw services that the accused had used after he left OSP was more than $45,000 (based on per search and not flat rate charges). The complaint also alleged that the accused had refused to pay for or reimburse the Republic of Palau for any part of the Westlaw services that he had used. Finally, the complaint alleged that the accused's conduct violated HRPC 8.4(c) (professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) and that that violation, in turn, amounted to a violation of HRPC 8.4(a) (professional misconduct for lawyer to violate or attempt to violate rules of professional conduct).

The accused responded that he did not use the Westlaw account for his personal use, but only to perform legal research in service to the indigent clients of the Legal Aid Society of Hawai'i; that his use of the Westlaw account did not cost the Republic of Palau any money whatsoever, in light of the fact that the account could not be cancelled and the monthly fee was due and payable whether or not the account was used; that the accused had no intent to deprive the Republic of Palau of anything of value; and that the Republic of Palau implicitly had consented to his use of the Westlaw account by continuing to pay the monthly Westlaw invoices, which detailed the monthly usage on the account at a time when no lawyer was working in OSP as special prosecutor. In addition, the accused pointed out that he had had no disciplinary record at all in more than 35 years as a lawyer and that he had freely admitted his usage of the Westlaw

5

account.

In November 2011, the accused signed a stipulation for discipline with the Hawai'i Disciplinary Counsel, in which he agreed that, by accessing and using OSP's Westlaw account for 14 months after he had resigned from OSP, and by refusing to pay or reimburse OSP or the Republic of Palau for any part of the Westlaw services that he had used, the accused violated HRPC 8.4(c) and HRPC 8.4(a). The accused stipulated that his substantial experience in the practice of law was an aggravating factor and that his lack of a disciplinary record and his willingness to accept responsibility for his improper use of Westlaw services were mitigating factors. Finally, the accused and the Hawai'i Disciplinary Counsel agreed that a private reprimand was an appropriate sanction. As noted, the Hawai'i Supreme Court's Disciplinary Board accepted the stipulation but rejected the parties' recommendation for discipline, determining instead that a public reprimand was the appropriate sanction for the accused's misconduct.

Notwithstanding Hawai'i's imposition of a public reprimand on the accused for his misconduct, the Bar now urges us to suspend the accused from the practice of law in Oregon for six months. The Bar contends that, in logging into a research service without permission or authority, using passwords provided to his former employer, and using research services paid for by his former employer and without paying the provider for those services, the accused engaged in conduct involving dishonesty that reflected adversely on his fitness to practice law, in violation of Oregon Rule of Professional Conduct (RPC) 8.4(a)(3). That rule provides,

"It is professional misconduct for a lawyer to * * * engage in

conduct involving dishonesty, fraud, deceit or misrepresentation that reflects adversely on the lawyer's fitness to practice law[.]"

In addition, although the Bar acknowledges that the accused did not stipulate that his conduct constituted a crime in Hawai'i, the Bar contends that the stipulated facts detailing the accused's unauthorized use of OSP's Westlaw account are sufficient to establish that the accused committed a criminal act under Hawai'i's criminal code. The Bar does not specifically identify which provision or provisions of the Hawai'i Revised Statutes that the accused's conduct violated, but it suggests several that might apply[4] and argues that the accused therefore violated Oregon RPC 8.4(a)(2). That rule prohibits a lawyer from "commit[ting] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]"

Finally, the Bar also contends that the accused's violations of Oregon's Rules of Professional Conduct themselves constitute a violation of RPC 8.4(a)(1), which prohibits a lawyer from violating the rules of professional conduct by his own actions or through the acts of others:

"It is professional misconduct for a lawyer to:

"(1) violate the Rules of Professional Conduct, knowingly assist or

---

[4] The Bar suggests that the accused's conduct amounted to a violation of one or more of the following statutes: Hawai'i Revised Statute (HRS) 708-833(1) (misdemeanor theft in the fourth degree -- theft of property or services of any value not exceeding $100); HRS 708-832 (misdemeanor theft in the third degree -- theft of property or services of any value exceeding $100); HRS 708-831(b) (felony theft in the second degree -- theft of property or services exceeding $300); HRS 708-895.6 (felony unauthorized computer access in the second degree); or HRS 708-895.7 (misdemeanor unauthorized computer access in the third degree).

7

induce another to do so, or do so through the acts of another[.]"

We accept the accused's stipulation and the Hawai'i Disciplinary Board's conclusion that, in using OSP's Westlaw password for Internet research without authorization to do so, the accused engaged in conduct involving dishonesty. We find that that conduct violated RPC 8.4(a)(3) and that that violation, in turn, constitutes a violation of RPC 8.4(a)(1). However, we reject the Bar's additional claim that the accused violated RPC 8.4(a)(2) by committing a criminal act. The Bar has the burden of establishing misconduct by clear and convincing evidence, BR 5.2, and the Bar has not met that burden in this case. The State of Hawai'i did not prosecute the accused for any crime. That alone is not dispositive,[5] but the Bar has not offered any legal analysis of the Hawai'i criminal code provisions that it cites, and it is not clear to us that the accused's misconduct squarely fits within the proscriptions of those laws.

We turn, then, to the question of the appropriate sanction for the accused's violation of RPC 8.4(a)(3) and RPC 8.4(a)(1). As this court stated in *In re Lopez*, 350 Or 192, 198, 252 P3d 312 (2011), in reciprocal discipline cases, the court has an independent

---

[5]     In *In re Kimmell*, 332 Or 480, 485, 31 P3d 414 (2001), this court, considering the predecessor rules to RPC 8.4(a)(2) and (3), held:

"Proof of conviction is not required to find a violation of DR 1-102(A)(3) or ORS 9.527(1). Similarly, although DR 1-102(A)(2) requires the court to examine an alleged 'criminal act,' this court has held that proof that an accused lawyer was convicted for such an act is not required to find a violation of DR 1-102(A)(2)."

8

obligation to determine the sanction merited by a lawyer's violation of this state's professional rules.  And, although this court often has concluded that the sanction that another jurisdiction has imposed is sufficient to vindicate Oregon's interests, we are free to impose a different sanction if that is appropriate.  *Id.*  In determining the appropriate sanction, we consider both the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991)  (Amended 2005)  (ABA Standards) and this court's cases.  *See Lopez*, 350 Or at 198 (so noting).

The ABA Standards direct courts to examine four factors in determining the appropriate sanction for a lawyer's professional misconduct:  (1) the ethical duty violated, (2) the lawyer's mental state, (3) the actual or potential injury caused by the lawyer's misconduct, and (4) the existence of aggravating or mitigating circumstances.  ABA Standard 3.0.  We examine those factors in turn.

1.    *Duty Violated*

By engaging in conduct involving dishonesty, the accused violated his duty to the public to maintain his personal integrity.  ABA Standard 5.1.

2.    *Mental State*

The ABA Standards provide that a lawyer acts with "intent" if it is the lawyer's "conscious objective or purpose to accomplish a particular result."  ABA Standards at 7.  A lawyer acts with "knowledge" if the lawyer acts with "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result."  *Id.*

The stipulation of discipline between the accused and the Hawai'i

9

Disciplinary Counsel does not recite any particular mental state. However, this court may infer from the facts set out in the stipulation that the accused used the OSP Westlaw password with the conscious objective to accomplish a particular result -- to perform Westlaw research on OSP's account without paying for the service. We therefore find that the accused acted intentionally.

3. *Actual or Potential Injury*

The Bar asserts that the accused's misconduct caused potential injury to OSP and actual injury to Thomson Reuters. The Bar does not explain how the accused's Westlaw use caused OSP potential injury, and we can see none. As we have discussed, OSP was required to pay Thomson Reuters the same flat monthly fee whether or not its Westlaw account was used. The accused's use of OSP's Westlaw password did not result in any additional charges to OSP or the Republic of Palau, and the record does not establish that there was potential for any other injury.[6]

The Bar's argument that the accused's conduct caused actual injury to Thomson Reuters is based on the theory that Thomson Reuters would have charged the accused for his Westlaw use if he had not dishonestly used OSP's account. However, there is no evidence in the record that the accused would have used Westlaw at all if he

_____

[6] We think it worth noting that the Republic of Palau did not appear to have considered itself to have been actually or potentially injured by the accused's conduct, insofar as, during the pendency of the Hawai'i disciplinary proceeding, the President of Palau personally requested that the accused reapply for the job of special prosecutor after the special prosecutor who replaced the accused at OSP was forced to resign from that position.

10

had not had OSP's Westlaw password. Moreover, and more importantly, the accused used OSP's password to access Westlaw. Thomson Reuters, then, *was paid* for the accused's use of the Westlaw services -- the Republic of Palau paid for the accused's usage. OSP was the only arguable victim of the accused's misconduct, and, as we have stated, OSP did not suffer any actual or potential harm.

4.       *Preliminary Sanction*

Having considered the duty violated, the accused's mental state, and the actual and potential injury caused by the accused's misconduct, we look to the ABA Standards for guidance in determining an appropriate sanction for conduct involving dishonesty, fraud, deceit, or misrepresentation. ABA Standard 5.1 provides, in part:

"Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation:

"5.11  Disbarment is generally appropriate when:

"(a) a lawyer engages in serious criminal conduct[,] a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

"(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

"5.12  Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 [disbarment] and that seriously adversely reflects on the lawyer's fitness to practice.

11

"5.13 Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law."

In considering those standards, we observe that they are not a perfect fit in this case. We have concluded that the accused acted intentionally, but only ABA Standard 5.11, which describes when disbarment is appropriate, addresses intentional conduct relating to a lawyer's failure to maintain personal integrity. That standard applies only when the lawyer has engaged in "serious criminal conduct" or "other intentional conduct involving dishonesty * * * that seriously adversely reflects on the lawyer's fitness to practice law." Although we have found that the accused acted intentionally, we have concluded that the Bar has not established that the accused engaged in criminal conduct, let alone serious criminal conduct. Moreover, as we will explain, we do not think that the accused engaged in conduct that seriously adversely reflects on his fitness. And, in any event, the Bar has not suggested that disbarment is an appropriate sanction in this case. We therefore conclude that ABA Standard 5.11 does not apply in this case.

ABA Standards 5.12 (suspension) and 5.13 (reprimand) refer to an accused lawyer's knowing conduct involving dishonesty, fraud, deceit, or misrepresentation. As this court explained in *In re Flannery*, 334 Or 224, 233, 47 P3d 891 (2002),

"[t]he principal difference between those two standards lies in the degree to which the conduct in question adversely reflects on the lawyer's fitness to practice law. Suspension is appropriate if the conduct 'seriously' adversely reflects on fitness; otherwise, reprimand is appropriate."

We do not think that the accused's conduct reflects "seriously adversely" on his fitness to practice law. The accused was not charged with a crime, he did not benefit

12

personally from his misconduct (the beneficiaries were the Legal Aid Society of Hawai'i and its indigent clients), and his misconduct did not cause any actual or potential harm. Those facts lead us to conclude that the accused's conduct does not "seriously" adversely reflect on his fitness to practice law, and ABA Standard 5.12 does not, by its terms, apply to the present facts. As a result, we determine preliminarily that the ABA Standard that most closely fits the conduct in this proceeding is Standard 5.13, which suggests that a public reprimand is an appropriate sanction.

5. *Aggravating or Mitigating Circumstances.*

ABA Standards 9.22 and 9.32 list aggravating and mitigating factors respectively that the court may consider to justify increasing or decreasing the court's preliminary determination of an appropriate sanction. The accused and the Hawai'i Disciplinary Counsel stipulated to the existence of one aggravating factor -- the accused's substantial experience in the practice of law, ABA Standard 9.22(i) -- and two mitigating factors -- his lack of a disciplinary record, ABA Standard 9.32(a), and his willingness to accept responsibility for his improper use of Westlaw services, ABA Standard 9.32(e). The Bar agrees that this court may find those aggravating and mitigating factors, but argues that this court should find three additional aggravating factors based on the stipulated facts: that the accused had a dishonest and selfish motive, ABA Standard 9.22(b); that the accused engaged in a pattern of misconduct, ABA Standard 9.22(c); and that the accused was indifferent to making restitution, ABA Standard 9.22(j).

The Bar argues that the accused acted with a dishonest or selfish motive because the accused "obtained a personal benefit [from using the OSP's Westlaw

13

account] in performing his job as a lawyer," but the Bar does not elaborate on that point. The Bar has not presented clear and convincing evidence that the accused used the OSP's Westlaw password in his research on behalf of indigent clients to achieve personal or financial gain. We find that the evidence in this proceeding does not support that aggravating factor.

The Bar also asserts that the accused engaged in a pattern of misconduct. It contends that the accused's misconduct "was not isolated or impulsive; it was continuing and deliberate." It is correct that, in this case, the accused's misuse of OSP's Westlaw account continued on occasion for 14 months. However, the Bar has not pointed to any case in which this court has found a "pattern of misconduct," as that phrase is used in the ABA Standards, from a single course of conduct, even a lengthy one. On the contrary, this court has applied that aggravating factor only in cases in which the lawyer has violated the disciplinary rules in more than one case or matter. *See, e.g.*, *In re McDonough*, 336 Or 36, 44, 77 P3d 306 (2003) (finding pattern of misconduct where lawyer repeatedly committed multiple criminal offenses); *In re Kluge*, 332 Or 251, 263, 27 P3d 102 (2001) (multiple misrepresentations in various circumstances revealed pattern of dishonesty and misconduct); *In re Haws*, 310 Or 741, 753, 801 P2d 818 (1990) (finding pattern of misconduct where lawyer failed to respond fully and truthfully to 12 separate state Bar inquiries concerning alleged disciplinary violations); *In re Luebke*, 301 Or 321, 336, 722 P2d 1221 (1986) (finding pattern of misconduct where the accused committed the same violations in two separate cases). Although we do not hold that an ongoing course of conduct never can amount to a "pattern of misconduct," we find that

14

the Bar has not proved that aggravating factor by clear and convincing evidence in this case.

Finally, the Bar points to the accused's indifference to restitution, inasmuch as the accused refuses to recognize any economic damages. The Bar contends that Thomson Reuters was deprived of payment for Westlaw services that the accused used after he had left OSP and that the accused was obligated to, but did not, reimburse OSP for the Westlaw services he used after he had left that office. As we have explained, however, Thomson Reuters was not deprived of payment for the services the accused used when he was working for the legal aid society; it was paid for those services by the Republic of Palau. And the Republic of Palau was required to pay the same monthly flat fee whether or not the accused used the services. The accused's misconduct did not result in any additional charge to OSP or the Republic of Palau, and no reimbursement was necessary. The Bar has failed to prove the aggravating factor of indifference to restitution by clear and convincing evidence.

To summarize, we agree with the Hawai'i Disciplinary Board's findings of aggravating and mitigating factors. We conclude that the mitigating factors outweigh the aggravating factor.

6. *Case Law*

The Bar argues that prior case law suggests that this court should suspend the accused for six months. The Bar characterizes the accused's conduct as "theft" and asserts that this court has imposed lengthy suspensions on lawyers who engage in theft. In support of that proposition, the Bar cites *In re Benett*, 331 Or 270, 14 P3d 66 (2000)

15

(lawyer suspended for 180 days for cashing and depositing checks from opposing counsel in satisfaction of debt already paid, and, in second case, charging excessive fee and failing to refund client money); *In re Kimmell*, 332 Or 480, 31 P3d 414 (2001) (lawyer suspended for six months for shoplifting jacket from retail store); *In re Summer*, 338 Or 29, 105 P3d 848 (2005) (lawyer suspended for 180 days for attempting to recover twice from separate insurers for his client's injuries, leading to his conviction for theft by deception); and *In re Unrein*, 323 Or 285, 917 P2d 1022 (1996) (lawyer suspended for 120 days for applying for and receiving unemployment compensation benefits on four separate occasions while knowing that she was ineligible for such benefits). Those cases all involved much more egregious misconduct than the accused's, and they all involved direct and significant financial gain, whether on behalf of the lawyer or the lawyer's client.

The Bar also points to *In re Houchin*, 290 Or 433, 622 P2d 723 (1981) (lawyer suspended for 30 days for enrolling as student in community college course that he was teaching to qualify for Veterans' Administration benefits). That case, too, involved an accused lawyer receiving a direct financial gain from his misrepresentation. In fact, this court based its decision to suspend rather than reprimand the accused lawyer in *Houchin* on the fact that he had acted dishonestly for the express purpose of obtaining a financial advantage.

In our view, this case more closely resembles two cases in which this court imposed public reprimands for the lawyers' misconduct: *Flannery*, 334 Or 224, and *In re Carpenter*, 337 Or 226, 95 P3d 203 (2004). *Flannery* involved an accused lawyer who,

16

after moving to Vancouver, Washington, renewed his Oregon driver license using the Canby, Oregon address of his girlfriend's parents, which was a criminal offense. This court found that the accused lawyer's conduct, while intentional, did not "seriously" adversely reflect on his fitness to practice law. 334 Or at 233-34. The court also found that the mitigating factors outweighed the aggravating factors and that the conduct giving rise to the proceeding was unlikely to recur. *Id.* at 235, 237. The court therefore imposed a public reprimand. *Id.* at 237. Similarly, in *Carpenter*, this court imposed a public reprimand on an accused lawyer who dishonestly posed as a particular high school teacher on an Internet site and then made statements that jeopardized that teacher's career. In that case, the court noted that the accused lawyer had not engaged in criminal conduct, that his misconduct did not arise in his practice of law, and that his misconduct did not benefit him personally. 337 Or at 244. The court stated that, although the accused lawyer had acted intentionally and caused some actual harm, his conduct did not "seriously" adversely reflect on his fitness to practice . *Id.* Again, the court found that the mitigating factors outweighed the aggravating factors and that the misconduct was unlikely to recur. *Id.*

In this case, too, we have concluded that the accused's misconduct did not seriously adversely reflect on his fitness to practice law and that the mitigating factors outweigh the aggravating factors. We are also persuaded that the conduct giving rise to this proceeding is unlikely to recur. Given those facts, and the fact that the accused has an unblemished record in 35 years as a practicing lawyer, we are satisfied that a public reprimand will adequately protect the public.

17

The accused is publicly reprimanded.