On a BR 3.5 notice of discipline in another jurisdiction and recommendation
filed October 30, 2013, accused is publicly reprimanded June 12, 2014

In re the Reciprocal Discipline of
JULIE D. SIONE,
*Accused.*
(OSB 13-117; SC S061766)

330 P3d 588

Martha M. Hicks, Assistant Disciplinary Counsel, Oregon State Bar, filed the notice of discipline in another jurisdiction and recommendation and reply.

Julie D. Sione, *pro se*, Manhattan Beach, California, filed the answer to BR 3.5 notice of discipline in another jurisdiction and recommendation.

PER CURIAM

## PER CURIAM

This is a reciprocal discipline proceeding pursuant to Oregon State Bar Rules of Procedure (BR) 3.5. The accused is licensed to practice law in Oregon and in California. She entered into a stipulation for discipline with the State Bar Court of California, arising out of three separate matters. The stipulated sanction was public reproval. The Oregon State Bar (the Bar), on receipt of notice of that action, notified this court and now recommends a public reprimand as reciprocal discipline. For the reasons stated below, we agree that the accused should be publicly reprimanded.

## I. BACKGROUND

### A. *Regulatory Context: Reciprocal Discipline*

We begin with a brief description of the applicable rules to provide context. Under BR 3.5, Oregon State Bar Disciplinary Counsel is required to notify this court and the State Professional Responsibility Board (SPRB) when it has received notice from another jurisdiction that an Oregon attorney practicing in that jurisdiction has been disciplined for misconduct. BR 3.5(a). The SPRB is required to recommend to the court any discipline in Oregon based on the discipline imposed by the other jurisdiction. *Id.* The order imposing discipline from the other jurisdiction is sufficient evidence that the accused lawyer committed the misconduct described therein. BR 3.5(b). The attorney is given the opportunity to respond, and the Bar is allowed a reply. BR 3.5(c), (d). The court is then required to determine "whether the attorney should be disciplined in Oregon for misconduct in another jurisdiction and if so, in what manner." BR 3.5(e). In reciprocal discipline cases, this court has an independent obligation to determine the appropriate sanction warranted by the accused's violation of this state's rules. *In re Lopez*, 350 Or 192, 198, 252 P3d 312 (2011).

This court's decision whether to impose discipline turns on its answer to two questions. First, "[w]as the procedure in the jurisdiction which disciplined the attorney lacking in notice or opportunity to be heard?" Second, "[s]hould the attorney be disciplined by the court?" BR 3.5(c). The court may refer the matter to the Disciplinary Board for

the purposes of taking testimony on those two questions. BR 3.5(e). Or, the court may determine the matter on the basis of the order imposing discipline from the other jurisdiction, along with any submissions of the parties. *Id.* In all events, the accused may not challenge in Oregon the underlying factual findings of the other jurisdiction. *In re Devers,* 317 Or 261, 264-65, 855 P2d 617 (1993).

B. *Facts*

The accused was admitted to practice in California in 2004. In June 2013, the accused entered into a stipulation for discipline with the Office of the Chief Trial Counsel, later approved by a judge of the California Bar Court, that involved three separate matters—the *Biggs* matter, the *Wilcox* matter, and a matter relating to an Agreement in Lieu of Discipline (ALD). We take the following from that stipulation.

1. *Biggs Matter*

Biggs employed the accused to represent him in a matter involving a charge of driving under the influence. Trial was set for October 28, 2009. The accused did not appear in court on that date. Biggs did not appear either, although he was aware of the trial date. The court issued a bench warrant for his arrest. About a month later, Biggs voluntarily appeared in court without the accused. The court ordered the accused relieved as counsel and recalled the bench warrant.

Based on those events, the accused stipulated that, by failing to appear on the date scheduled for Biggs' trial, she intentionally, recklessly, or repeatedly failed to perform legal services with competence, in willful violation of California RPC § 3-110(A).

2. *Wilcox Matter*

Wilcox, a former client of the accused, submitted a complaint to the State Bar of California Bar. In February 2010, an investigator for the California Bar sent the accused two letters regarding the complaint, requesting that the accused respond in writing to the allegations of professional misconduct raised by Wilcox's complaint. The accused

received the letters, but did not respond. On March 2, 2010, the investigator called the accused, and the accused told the investigator that she would fax her response that day. She failed to do so. On April 20, 2010, the investigator sent the accused a follow-up letter, again requesting a response. The accused received the letter, but did not provide a response to the allegations until July 21, 2010.

Based on those events, the stipulation concludes that the accused failed to cooperate and participate in a disciplinary investigation pending against the accused, in willful violation of California Business and Professions Code (CaBPC) § 6068(i).

### 3. *Agreement in Lieu of Discipline Matter*

In connection with the *Biggs* and *Wilcox* matters, the accused signed an ALD with the Office of the Chief Trial Counsel of the California Bar Court. The ALD was effective for a one-year period, commencing on March 9, 2011, and concluding on March 9, 2012. The ALD required the accused to take various actions by the end of that period, including submission of a report to the California Bar's Office of Probation, attending the California Bar's Ethics School, and completion of a specified number of hours of Minimum Continuing Legal Education (MCLE) on the subjects of law office management and attorney-client relations.

The accused, however, violated the terms of her ALD by failing to comply with those conditions. Specifically, she submitted her final written report to the Office of Probation one month late, did not attend Ethics School until after the one-year period had concluded, and failed to complete any of the required MCLE hours in law office management or attorney-client relations. Based on those events, the accused stipulated that she had failed to keep all agreements made in lieu of disciplinary prosecution, in willful violation of CaBPC § 6068(l).

### C. *California Bar Discipline*

On June 28, 2013, a judge of the California Bar Court approved the stipulation and ordered that the accused be publicly reproved. In considering the appropriate sanction for the accused's violations, the California Bar Court

determined that there were no aggravating circumstances but that there were mitigating circumstances. The California Bar Court noted that the accused's misconduct occurred during a time when she was coping with family problems. Specifically, her father had been hospitalized for terminal illness. Following his hospitalization, he came to live with the accused, and she became his primary caregiver until he passed away. That responsibility, the California Bar Court explained, "put great strain on [the accused] and diverted her time and attention from participating in the State Bar investigation." The California Bar Court considered that the violations could warrant a suspension, depending upon the extent of the misconduct and the degree of harm, but ultimately concluded:

> "Here, [the accused] failed to comply with her duty to cooperate in a State Bar [i]nvestigation and failed to keep an agreement made in lieu of discipline. [The accused's] offenses were not severe and caused little harm to the administration of justice. Further, with respect to [the accused's] failure to cooperate in the State Bar investigation, [the accused's] attention was focused on providing end-of-life care for her father which partially contributed to, but does not excuse, her lack of participation in the investigation. Additionally, [the accused's] failure to appear on Biggs' behalf at trial did not result in harm to Biggs since he was able to have the bench warrant recalled at the November 24, 2009 hearing without being taken into custody."

## D. *Oregon State Bar Recommendations*

The SPRB, on receipt of notice of the reproval, directed Disciplinary Counsel to notify this court and to advise that it recommends that the accused be publicly reprimanded for violation of RPC 8.4(a)(4) (conduct prejudicial to the administration of justice) and RPC 8.1(a)(2) (failure to respond to demand from disciplinary authority for information), based on the misconduct arising out of the Biggs and Wilcox matters, respectively. The SPRB offered no recommendation regarding the accused's failure to comply with the ALD, because there is no Oregon equivalent rule or statute.

Regarding the *Biggs* matter, the Bar asserts that the accused violated RPC 8.4(a)(4) by failing to appear for trial in a case in which she was attorney of record. The Bar contends that, as a result of her failure to appear, the trial court suffered significant actual harm, in that it required the issuance of a bench warrant, required an otherwise unnecessary appearance by Biggs to recall the bench warrant, necessitated a new trial date and appointment of new counsel, and caused delay in the resolution of the charges against Biggs. Further, the Bar contends that the accused caused actual and potential harm to Biggs because her failure to appear subjected Biggs to arrest under the warrant and required him to appear to recall the bench warrant, and delayed resolution of his case while new counsel prepared to try it. As for the *Wilcox* matter, the Bar contends that the accused violated RPC 8.1(a)(2) by her repeated failure to respond to the requests of the California Bar investigator.

On the matter of appropriate discipline, the Bar submits that there are three aggravating factors attributable to the accused, namely: (1) a pattern of misconduct; (2) multiple offenses; and (3) substantial experience in the practice of law. The Bar also submits that there are three mitigating factors attributable to the accused, namely: (1) absence of a dishonest or selfish motive; (2) personal or emotional problems; and (3) imposition of sanctions by the California Bar Court. Oregon case law, the Bar observes, suggests that a period of suspension for violation of both rules may be appropriate. The Bar, however, gives significant weight to the fact that the accused's attention was focused on providing end-of-life care to her father during the period when the conduct occurred. Ultimately, the Bar recommends that the court publicly reprimand the accused for violation of RPC 8.4(a)(4) and RPC. 8.1(a)(2).

E.  *The Accused's Response*

In general, the accused contends that there were extenuating circumstances that explain her conduct in both the *Biggs* and *Wilcox* matters. According to the accused, in the *Biggs* matter, her client instructed her not to appear at the scheduled hearing date. She asserts that Biggs had told her that he was out of the country and would be unavailable

to appear on the scheduled date. The accused claims that she explained the repercussions to her client, namely, that the court likely would issue an immediate bench warrant and that she would be withdrawn from his case. Moreover, she contends, the date was not actually a trial date, but a final pretrial status conference. As a result, the accused explains, no witnesses had been subpoenaed, no large block of trial time set aside, and no jurors summoned.

Concerning the *Wilcox* matter, the accused explains that she was not actively practicing law at the time, did not have an office or a secretary, and was not regularly checking her post office box because she had nothing pending. She does not dispute that the California Bar's investigator sent her letters inquiring about her conduct, but suggests that she may not have received the earlier letters. The accused explains that, during that time, she was providing 24-hour-a-day hospice care in her home for her dying father, whose daily medical needs were significant. As a result, she contends, she was physically and emotionally exhausted.

The accused acknowledges that, at some point, she had a telephone conversation with an investigator for the California Bar. The accused states that she told the investigator that the complaint was meritless and that she would be able to so demonstrate, but that she would need time to go through the file and correspondence—something that she could not do at that time because of the situation with her father. The accused claims that the person with whom she spoke was very understanding, and the accused was left with the "distinct impression" that she would be permitted to get her response in when she could.

The accused notes that her father died on June 26, 2010, and that she submitted a detailed response to the California Bar a month later, with supporting documentation. Based on that submission, she observes, the California Bar determined the *Wilcox* complaint to be unfounded. The accused stresses that she did respond, albeit late; that she communicated with the California Bar about the hardship that she was facing at that time; that she asked for—and was under the mistaken impression that she had received—an extension of time to respond fully; and that she fully

responded without further prompting by the California Bar or threat of disciplinary charges, within a month of her father's passing. Accordingly, she concludes, her conduct does not rise to the level of knowingly failing to respond for a demand for information from a disciplinary authority.

The accused further contends that she was "not allowed to be fully heard" under the California Bar's procedures. She does not explain precisely what she was not allowed to do or say, however. She states that she did not understand the California process and was "naive" about the California Bar's role in it. She contends that "I let myself get talked into the agreement," rather than dispute the charges. She acknowledges that she is bound by the stipulation of facts contained in the agreement with the California Bar, but insists that, at the time, she was unaware that the agreement would be considered a form of "*res judicata*" that would prohibit her from attempting to argue against the charge at a later time. In short, she asks that we decline to impose any discipline based on the California misconduct.

## II. ANALYSIS

As we have noted, under BR 3.5, our task is to address two issues: Whether the accused was afforded notice and an adequate opportunity to be heard in California and whether discipline should be imposed based on the misconduct that occurred there.

### A. *Notice and Opportunity to be Heard*

We may quickly dispose of the first issue. Although the accused does assert that she was "not allowed to be fully heard" under the California Bar's procedures, she does not identify what she was not allowed to say or do. At bottom, her complaint is that, in retrospect, she now believes that she exercised poor judgment in entering into the stipulation with the California Bar. Nothing in her response, however, establishes a basis for concluding that she was not afforded notice and an adequate opportunity to be heard.

### B. *Whether to Impose Discipline*

We turn, then, to whether to impose discipline for her misconduct. That requires two subsidiary determinations,

namely, whether her conduct in California constitutes misconduct under the Oregon Rules of Professional Conduct and, if so, what sanction is appropriate to such misconduct. In making those determinations, we rely on the stipulation between the accused and the California Bar Court. We do not take into account the additional evidence that the accused offered in attempting to controvert portions of the stipulation; nor do we take into account material that the Bar offered in response. *Devers*, 317 Or at 264-65 ("[I]n a reciprocal discipline proceeding, the accused has no opportunity to challenge in Oregon the underlying factual findings of the other jurisdiction.").

### 1. *Misconduct*

We begin with the question of misconduct, starting with the Biggs matter and whether the accused violated RPC 8.4(a)(4). To establish a violation of the rule prohibiting a lawyer from engaging in conduct prejudicial to the administration of justice, RPC 8.4(a)(4), the Bar must prove that (1) the lawyer engaged in "conduct," *i.e.*, either did something the lawyer should not have done or failed to do something the lawyer should have done; (2) the conduct occurred during the "administration of justice," *i.e.*, during the course of a judicial proceeding or an analogous proceeding; and (3) the lawyer's conduct resulted in "prejudice" to either the functioning of the proceeding or to a party's substantive interests in the proceeding. *In re Hartfield*, 349 Or 108, 115, 239 P3d 992 (2010) (quoting *In re Skagen*, 342 Or 183, 213, 149 P3d 1171 (2006)). To prove prejudice, it must be shown that the lawyer engaged "either in repeated acts causing some harm to the administration of justice or a single act that caused substantial harm to the administration of justice." *Skagen*, 342 Or at 214. The administration of justice includes both the procedural functioning of the trial or other proceeding and the substantive interests of the parties. *In re Kluge*, 335 Or 326, 345, 66 P3d 492 (2003).

As we have noted from the stipulation, the Biggs case was called for trial, and the accused did not appear. She stipulated that her failure to appear was willful. That failure to appear for trial created an unnecessary burden

on court resources, caused the necessity of issuing a bench warrant, and contributed to the delay in resolving the charges against Biggs. In that regard, this case recalls the facts of *In re Carini*, 354 Or 47, 308 P3d 197 (2013), in which this court held that the accused's repeated failure to appear for docket call and for trial caused harm to the administration of justice in that the absences required the court to attempt to locate counsel, issue arrest warrants, and reschedule proceedings. *Id.* at 55. We conclude that the accused violated RPC 8.4(a)(4) in failing to appear for trial.

With respect to the *Wilcox* matter, it is undisputed that, for a period of several months, the accused did not respond to inquiries from the California Bar investigator. At the latest, the accused received notice of those inquiries when she received a telephone call from the investigator in March 2010. It may be that, during the conversation, the accused may have mistaken the investigator's sympathy for her situation as an indication that the California Bar was willing to give her an extension of time to fully respond. Nevertheless, she should have been disabused of that impression after the investigator sent the April 20, 2010, letter, reiterating the need for her to respond. She did not do so until three months later. In failing to respond to a disciplinary investigation, the accused violated RPC 8.1(a)(2).

2. *Sanction*

That leaves the matter of the appropriate sanction for the accused's violations of RPC 8.4(a)(4) and RPC 8.1(a)(2). The court is guided by the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards). *In re Page*, 326 Or 572, 577, 955 P2d 239 (1998). The ABA Standards set out a method for assigning sanctions for professional misconduct, which entails consideration of: (1) the ethical duty violated; (2) the lawyer's mental state; and (3) the actual or potential injury caused by the lawyer's misconduct. A preliminary sanction is determined based on consideration of those factors, followed by possible modification of that sanction based on the existence of aggravating or mitigating circumstances. *See In re McDonough*, 336 Or 36, 44, 77 P3d 306 (2003) (so stating).

*Duty Violated.*   By engaging in conduct that is prejudicial to the administration of justice, the accused violated her duty to the legal system. ABA Standard 6.1 and 6.2. By failing to respond to the California Bar Court's disciplinary investigation, the accused violated her duty owed as a professional. ABA Standard 7.0.

*Mental State.*   The ABA Standards provide that a lawyer acts with "knowledge" if the lawyer acts with "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standard at 7. In this case, the accused stipulated that she acted willfully with respect to all of the instances of charged misconduct. That stipulation suffices to establish that she acted knowingly under the ABA standards. *Lopez*, 350 Or at 199 (California stipulation that the accused acted willfully established knowing violation under ABA standards).

*Actual or Potential Injury.*   The accused's failure to appear at a scheduled court date placed an unnecessary burden on the judicial system by preventing the court from going forward with the case and necessitating the issuance of a bench warrant. In addition, the accused's delay in responding to the California Bar's inquiry about a complaint that had been submitted against the accused caused the California Bar to be unable to complete its investigation of the complaint and delayed resolution of the complaint for the complainant. That delay was more than five months.

*Preliminary Sanction.*   Based on the foregoing examination of the duty violated, the accused's mental state, and the extent of actual or potential injury, we next determine a preliminary sanction under the ABA Standards. Here, the accused's violation of her duty owed to the legal system implicates ABA Standard 6.2, which provides, in part:

> "Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to expedite litigation or bring a meritorious claim, or failure to obey any obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists:

"* * * * *

"6.22 Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding."

In a similar vein, the accused's violation of her duty owed as a professional implicates ABA Standard 7.0, and, because the accused's conduct was knowing, ABA Standard 7.2 provides that the appropriate sanction is suspension:

"Suspension is appropriate when the lawyer knowingly violates a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system, even when a lawyer does not intentionally abuse the professional relationship by engaging in deceptive conduct."

ABA Standards at 46.

*Aggravating or Mitigating Circumstances.* The Bar suggests that the accused engaged in a pattern of misconduct and that such a pattern constitutes an aggravating circumstance. The accused, however, committed two discrete and unrelated violations, and we find no "pattern" of misconduct on her part. That said, we do note that those two discrete and unrelated violations qualify as "multiple offenses" under the aggravating circumstances set out in ABA Standard 9.22(d).

With respect to mitigating circumstances, we find three: the absence of a dishonest or selfish motive, ABA Standard 9.32(b); personal or emotional problems (the accused's provision of end-of-life care for her father), ABA Standard 9.32(c); and the imposition of sanctions by the California Bar Court, ABA Standard 9.32(k).

On balance, we find that the mitigating circumstances outweigh the sole aggravating factor. Accordingly, we determine that the appropriate sanction in this case is a public reprimand.

The accused is publicly reprimanded.